UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| BRIAN KEITH SCOTT | CIVIL ACTION NO. 09-1032-P |
| VERSUS | JUDGE HICKS |
| JERRY GOODWIN, ET AL. | MAGISTRATE JUDGE HORNSBY |

REPORT AND RECOMMENDATION

In accordance with the standing order of this Court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

STATEMENT OF CLAIM

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Brian Keith Scott ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this Court on June 17, 2009. Plaintiff is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. He claims his civil rights were violated by prison officials while incarcerated at the David Wade Correctional Center in Homer, Louisiana. He names Warden Jerry Goodwin, Joe William, John Martin, and David Thomas as defendants.

Plaintiff claims Warden Jerry Goodwin's policy for escorting inmates placed his life in jeopardy. Plaintiff claims that in July 2008, he was transported to the hospital for a heart evaluation and stress test. He claims he had a verbal altercation with an inmate who was also on the hospital trip. He claims that after returning to David Wade Correctional Center, he was required to remain in restraints because he was on extended lock-down but the other

inmate was not. Plaintiff claims the trip officer removed the restraints from the other inmate. Plaintiff claims he feared that he was in danger. Plaintiff admits that he was not physically injured, but claims he suffered mental injuries.

Plaintiff claims inmates are escorted from the South Compound to the North Compound in full shackles while the other inmates are not shackled. He claims the inmates on the South Compound are allowed outside with garden tools, shovels, pitch forks, and trimmers. Plaintiff claims that on January 10, 2009, Captain David Thomas shackled him with handcuffs and placed him in front of an inmate with no shackles when he escorted him to the medical department. He claims the actions of Captain David Thomas placed him at risk. He claims he had to refuse to go to doctor appointments because he feared he would be attacked while shackled.

Plaintiff claims that on April 12, 2009, Nurse Joe William told him it was safe to go to the medical department on the South Compound. Plaintiff claims unshackled inmates were out for evening dinner and on the basketball court. He claims he was in fear but needed a medical examination because his rectum was hemorrhaging. He claims he was transported to the medical department in a wheelchair in full shackles. Plaintiff admits that two guards escort an inmate who is shackled.

Plaintiff claims that when he got his hair cut by the inmate barbers, he was in shackles. He claims he feared that an inmate barber could take the hair trimmer and attack

him. He claims that he refused haircuts when the inmate barber was an enemy because he feared for his safety.

Plaintiff claims that on April 5, 2009, nurse John Martin denied him medical treatment for his bleeding rectum at his cell because he filed a grievance regarding the shackle policy. Plaintiff claims Martin refused to examine him unless he went to the medical department. Plaintiff claims Martin did not check his pulse or vital signs. He claims he refused to allow Martin to examine his rectum. He claims an incident report was filed against him for malingering because he refused to walk in shackles to the medical department. He claims he was sanctioned to ten days isolation and forfeiture of a mattress from 5 a.m. until 9 a.m.

Plaintiff claims that on April 12, 2009, he made an emergency medical request because he was hemorrhaging from he rectum. He admits that he was taken to the medical department where his vitals and pulse were checked. He claims nurse Joe William wanted to examine his rectum by inserting his finger in him. He claims William knew that he would refuse the examination. He claims William was not qualified to examine and diagnose him. He claims William was negligent.

Plaintiff claims his gums were swollen and bleeding. He claims his gum was abscessed and cut. He admits that he refused to go to the dentist because he did not want to be transported in restraints.

Plaintiff claims that on November 9, 2009, he stopped taking his fiber powder (stool softener) because it made his bowel movements irregular and his condition worse. He claims he continued to bleed from his rectum and have hemorrhoids.

Plaintiff claims he is a borderline diabetic. He claims he was refused a sweet snack to manage his condition because he was not on medication. He claims he was denied a double portion of dessert to keep his diet in balance. Plaintiff claims his prescriptions for his heart and blood pressure medications were not refilled timely because he filed this lawsuit. He claims he lost approximately 27 pounds .

Plaintiff claims his First Amendment Rights were violated. He claims he is Muslim and his religious beliefs oppose vaccinations because of the threat of warfare and the transmission of germs. Plaintiff claims that if he refused the vaccination, he would be confined in his cell until his release date in 2016. He claims he requested and was denied an alternate procedure such as an x-ray to see if he had been exposed to the germ. Plaintiff claims he was exposed to inmates who had coughs.

Accordingly, Plaintiff seeks monetary compensation and to be transferred to another facility.

For the reasons that follow, Plaintiff's complaint should be dismissed as frivolous.

## LAW AND ANALYSIS

**Failure to Protect**

The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged inmate violence is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

"It is not, however, every injury suffered by a prisoner at the hands of another that translates into constitutional liability for prison officials." Farmer, 114 S.Ct. at 1977. Instead, to prevail on a claim based on a failure to protect, the inmate must show that he is incarcerated "under conditions posing a substantial risk of serious harm" and that the defendant prison officials were deliberately indifferent to the inmate's health and safety. Id. at 1977-78. The test for deliberate indifference is a subjective one. Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979.

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds that the facts alleged do not support a finding of deliberate indifference. Plaintiff does not allege that he was personally subject to an excessive risk of attack, nor does he allege prison officials were aware of any excessive risk. In fact, Plaintiff has failed to allege that he was attacked by another inmate while he was in restraints. He also admits that when he was transported in restraints, he was escorted by two guards. Accordingly, the actions on the part of the prison officials do not evidence an attitude of deliberate indifference.

Furthermore, Plaintiff's allegations fail to demonstrate that he has sustained any physical injury as a result of the alleged failure to protect. Under the Prison Litigation Reform Act, "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e). Plaintiff seeks monetary compensation, but fails to allege a physical injury caused by Defendants' alleged failure to protect.

Accordingly, Plaintiff's claims for damages and for cruel and unusual punishment in the form of deliberate indifference to his health and safety should be dismissed with prejudice as frivolous.

**Denial of Medical Treatment**

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Finally, a prisoner must also allege an injury that is more than de

minimis, although it need not be significant. See Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). See also Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

Plaintiff claims that on April 5, 2009, he was denied medical treatment for his bleeding rectum. He admits, however, that he refused to go to the medical department to be examined and also that he refused to allow the nurse to examine his rectum.

Plaintiff claims that on April 12, 2009, he was denied medical treatment for his bleeding rectum. He admits, however, that he was taken to the medical department and that his vitals and pulse were checked by the nurse.

Plaintiff claims he refused to allow the nurse to examine his rectum because he was not qualified. He claims the nurse was negligent. Plaintiff also claims he was denied medical treatment for dental issues. He admits, however, that he refused to go to the dentist because he did not want to be transported in restraints. Plaintiff further admits that in

November 2009, he stopped taking his fiber powder because he did not agree that it was helping his condition. Plaintiff also disagrees with the diet that he was placed on for diabetes. He further claims his pills were not refilled timely.

Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Furthermore, as previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Retaliation**

Plaintiff claims his prescriptions were not refilled timely because he filed this action. Plaintiff claims he was denied medical treatment at his cell because he filed a grievance. To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident–the placement in administrative segregation-would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The retaliatory motives alleged by Plaintiff are entirely conclusory as he provides no specific allegations showing that "but for" this motive his prescriptions would have been timely filed and "but for" this motive he would have received medical treatment at his cell.

Accordingly, Plaintiff's claims regarding retaliation should be dismissed with prejudice as frivolous.

**First Amendment Violation**

Plaintiff alleges that Defendants violated his First Amendment right to freedom of religion. Specifically, Plaintiff alleges that if he refused to be vaccinated, Defendants would confine him to his cell until his release date in 2016. Plaintiff claims he is Muslim and his religious beliefs oppose vaccinations because of the threat of warfare and the transmission of germs.

Prisoners retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); citing Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Incarceration, however, brings about the necessary withdrawal or limitation of these rights. Id. "The constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420.

The U.S. Supreme Court set forth the general test of prison restrictions on an inmate's First Amendment rights in the case of Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Turner provides that a restriction is valid "if it is reasonably related to legitimate penological interests." Id. at 89. In making a determination as to whether the impingement meets the penological interest standard, the Court must employ the four factor test set forth in Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The factors are as follows: (1) Whether the penological objective underlying the regulation at issue is legitimate and neutral, and that the regulation is rationally related to the objective; (2) whether there are alternative means of exercising the rights that remain open to inmates; (3) what impact the accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison; and (4) whether there are ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. Id.

at 414. Courts need not consider each factor, however, and do not have to weight the factors evenly. Scott v. Mississippi Dep't of Corrections, 961 F.2d 77, 80 (5th Cir.1992).

Prison officials have an obligation to provide inmates with health care. Estelle v. Gamble, 429 U.S. 97 (1976). In this case, the prison's interest in preventing the spread of contagious and/or dangerous diseases is compelling. Vaccinations are a legitimate and neutral method to prevent the spread of a contagious and/or dangerous disease in the inmate population. The Supreme Court upheld as constitutional a statute requiring all adults to receive a small pox vaccination. Jacobson v. Massachusetts, 197 U.S. 11, 31, 25 S.Ct. 358, 363, 49 L.Ed. 643 (1905). Furthermore, the regulation in question does not involve an ongoing restriction on Plaintiff's ability to practice his religion. The vaccination is a one-time procedure. As such, there is not a need to look for alternative means by which Plaintiff can practice his faith. Plaintiff had not alleged that receipt of a vaccination would preclude him from exercising his religion. The impact of accommodating Plaintiff's right to refuse vaccinations for contagious and/or dangerous diseases on other inmates and prison staff is great. Plaintiff has not alleged any alternative to being vaccinated. Thus, the regulation of requiring inmates to be vaccinated is reasonable and does not violate Plaintiff's First Amendment right to the free exercise of religion.

Accordingly, Plaintiff's First Amendment claims should be dismissed with prejudice as frivolous.

**Transfer**

Plaintiff was incarcerated at the David Wade Correctional Center when he filed this complaint. As relief, he sought to be transferred to another facility. Plaintiff is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.

The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Under Olim and Meachum, this Court has no authority to order the State to transfer Plaintiff to another prison. Furthermore, Plaintiff has been transferred and his claim for relief is moot.

Accordingly, Plaintiff's request for a transfer to another facility should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim

as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See <u>Hicks v. Garner</u>, 69 F.3d 22 (5th Cir. 1995); <u>Booker v. Koonce</u>, 2 F.3d 114 (5th Cir. 1993); <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827 (1989).

The Court finds that the IFP complaint based upon a violation of Plaintiff's civil rights lacks an arguable basis in fact and law.

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and

that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 29th day of June, 2010.

```
                                    _____
                                            MARK L. HORNSBY
                                    UNITED STATES MAGISTRATE JUDGE
```